# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00107-CR

**Ryan Hanson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 0982162, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

A jury found appellant Ryan Hanson guilty of capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West 1994). Pursuant to the jury's findings at the punishment phase of trial, the district court assessed punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division. *See id*. § 12.31; Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2001). Appellant challenges his conviction by forty-one points of error. We will modify the judgment and, as modified, affirm the conviction.

### DISCUSSION

*Legal and Factual Sufficiency*

By his thirty-seventh through fortieth points of error, appellant argues that the evidence is legally and factually insufficient "to sustain the allegation that appellant committed the

offense of capital murder as a party" under either section 7.02(a)(2) or section 7.02(b) of the Texas Penal Code. *See* Tex. Penal Code Ann. § 7.02(a)(2), (b) (West 1994).[1]

The record reflects that the body of John Davis Cavness, Jr., the victim, was found on the kitchen floor of his two-bedroom house on the evening of January 19, 1998. He had been stabbed and beaten. Elizabeth Peacock, Travis County Deputy Medical Examiner, testified that Cavness's head had sustained numerous blows, which were consistent with being hit by a hammer, and there were six cuts to his throat, which were consistent with being cut by a knife. He also had defensive wounds on one hand. A knife was found in the kitchen sink, and several of Cavness's personal belongings were missing from his house.

Alvina Raney, a fingerprint specialist with the Austin Police Department, testified that one fingerprint matching appellant's known prints was found on the door jam between the master bedroom and the bathroom. A print from Chris Kotaska was found on a beer bottle sitting on the coffee table in the living room. Two prints matching David Ludwick's prints were found on the wall and door jam in the kitchen above where Cavness's body was found.

Cavness had last been seen alive on the night of January 16 at the Rainbow Cattle Company, an Austin bar and nightclub. He had been in the company of appellant, Ludwick, and Kotaska. Ludwick and Cavness knew each other from previous encounters at the club. A witness for the State testified that he observed Ludwick introduce appellant and Kotaska to Cavness. Cavness purchased drinks for Ludwick, appellant, and Kotaska, among others, during the course of the evening. The witness also saw Ludwick and Cavness dancing together later and testified that

---

[1] Liability as a party is liability for the criminal acts of another. *See* Tex. Penal Code Ann. §§ 7.01, .02 (West 1994).

2

appellant spent most of the evening in the pool table area of the club. The witness left the club at 12:30 a.m.

Cavness's neighbor testified that at approximately 2:30 a.m., January 17, she heard the arrival of at least three people at Cavness's house. Thirty minutes later she heard two or three voices.

Shortly thereafter, appellant, Ludwick, and Kotaska arrived at the apartment of Chase Coulter. The three had been staying with Coulter for several days. According to Coulter, Ludwick coordinated a hasty collection of the personal belongings of the three and the packing of those things into a truck in the apartment parking lot. During the flurry of activity by Kotaska and Ludwick, appellant was either vomiting or lying on a bed. The three men left Coulter's apartment together in the truck.

On January 19 a few blocks from an El Paso bus station, witness Julie Chavez saw appellant get out of the driver's side of a truck later identified as belonging to Cavness. Chavez also saw Ludwick get out of the passenger's side of the truck. Appellant and Ludwick abandoned the truck.

Appellant and Ludwick were apprehended at separate locations in Los Angeles, California. When appellant was arrested, he had in his possession a watch matching the brand and model of a watch missing from Cavness's house. After his arrest, appellant gave the following statement:

> My name is Ryan Andrew Hanson. . . . I am currently in jail at the Los Angeles
> Police Department. . . .

3

When I was in Austin, Texas I was walking down the street and I met David Ludwick. [Ludwick] told me if I needed a place to stay I could stay with him. When I got there Chris [Kotaska] was already staying there. . . . We were there less than a week. When we moved out we went to [Coulter's apartment]. [Ludwick] knew [Coulter] and called him and said he needed a place to stay. . . .

We were at [Coulter's apartment] three or four days. We had planned on going to L.A. I wanted to go and he wanted to go and it was better than going alone. We did not have any money and I got my last paycheck . . . on the Friday before we left.

. . . We left [Coulter's apartment] on the bus and went to Guadalupe. We got off the bus and went to the apartments across the street from the Rio Grande Coffee House. . . . We got a stereo from a guy that owed [Ludwick] some money.

From there we went towards Sixth Street. Along the way [Ludwick] sold [the stereo] to a guy on Sixth Street. We went to a bar . . . [and] played pool there and had a cigarette outside in the back. We left there after dark, it was dark by then, 7 or 8.

[Ludwick] said that he knew the owner/manager of the [Rainbow Cattle Company] . . . . We went there before we played pool and he wasn't there. We went back later and [Ludwick] asked again and he was there. [Ludwick] talked to him for about half an hour. We, me and [Kotaska], and met a guy who's last name started with a "C". His last name had a V in it. We played pool for a long time and [Ludwick] danced with him. The guy bought us a lot of mixed drinks. I must have had 7 or 8 mixed drinks.

In the bar [Ludwick] came up to me and said, okay, this is what we are going to do. He is going to take us back to his house, and we are going to rob him, knock him over the head. I told [Ludwick] I'm not doing nothing. [Kotaska] just pretty much went along. He said, "Okay, okay". We talked with this guy named John C. and played pool and drank, that's about the jest of it.

We left the bar in a cab. The cab was a yellow cab, I think. I don't remember where I sat in the cab, but I think either [Kotaska] or [Ludwick] sat up front. We went to John's house.

We got out of the cab and walked up to the house. John opened the door and went in. I don't know the order of entry into the house. I went straight to the back bedroom and jumped on the bed. I was concentrating on breathing. If I concentrate I can control if I throw up or not and I was trying to stop it.

From behind me about 10 or 15 minutes later, I was still on the bed. I heard a dull thud and I laid there. After that the screaming started going, "Let's go, let's go, let's

4

go". I got up and went and saw the body on the floor. I tried not to look at it, I did not want to look at it. I looked around for things of value. I was not interested in being there, I did not want to be there any more. I picked up the knife and washed it off in the sink. I must of got the hammer and I put the hammer in there. I had been carrying the hammer all day, I had it in a brown leather knapsack, when we got there, I had it at the bar with us. I took a watch from the living room table. It was a Timex, it should be in my property here in jail. The watch is a brown and black. I don't recall taking anything else.

I know what was stolen out of the house. A 35 mm camera with a telephoto lens, credit cards (Citibank, Exxon, American Express, two or three Visa cards, lots of department store credit cards, and stereo amplifier, two or three rings, a gold necklace, and another watch. . . . That is all I can recall being taken.

We left the house and I got in the back seat of the pick up. It was a king cab, Ford, I am pretty sure it is black, but I was not paying attention to the color.

We went to [Coulter's apartment] and got our clothes. At [Coulter's apartment], I went to the bathroom and threw up. I got back in the cab and went to sleep. We went straight to El Paso.

We went there because it was on the way to California. In El Paso we went to a department store, a mall. [Ludwick] . . . tried to get a cell phone, he used a Visa card, Citibank, I think. The salesman picked up it wasn't his and it did not work. [Ludwick] was talking to some people outside [a restaurant] and the guy told us there were check points outside of El Paso. [Ludwick] did not want to take the truck any further. We unloaded the truck and left the truck pretty near the border and got on a bus.

We used the Visa card for gas and the cards were in our possession throughout the bus ride. But on one stop we threw them away.

When we got to Los Angeles we sold the camera, a beeper, a cell phone, a ring, a silver bracelet. From this sale I did not get any money. We stayed at the Hotel Cecil and [Ludwick] sold [the items] at a pawn shop down the street. . . .

I have drawn a map of the inside of the house and listed what was stolen in my own writing. I also drew a picture of the knife used in this murder.[2]

---

[2] Appellant's written confession was typed in capital letters only. For convenience we have reproduced it using both capital and lower-case letters, but we have not altered its substance.

The sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In this case, the jury charge authorized appellant's conviction as a party to capital murder pursuant to either penal code section 7.02(a)(2) or (b). When alternate theories of the offense are submitted disjunctively, a general verdict of guilty is proper if the evidence is sufficient to sustain a conviction on any of the theories submitted. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). In this cause, we find evidence sufficient under both theories.

A. *Section 7.02(a)(2)*

The State is constitutionally required to prove all elements of murder beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 361 (1970); *Geesa v. State*, 820 S.W.2d. 154, 156 (Tex. Crim. App. 1991). In order to convict appellant as a party to capital murder under section 7.02(a)(2),[3] the State was required to prove the following: (1) another person committed a criminal offense, (2) the defendant had the intent to promote or assist that person, and (3) the defendant solicited, encouraged, directed, aided or attempted to aid that person in the commission of the criminal offense. Tex. Penal Code Ann. § 7.02(a)(2); *see Pesina v. State*, 949 S.W.2d 374, 382 (Tex. App.—San Antonio 1997, no pet.). Appellant's points of error focus on the second and third elements and not the first, which was established by appellant's own statement.

_____

[3] Section 7.02(a)(2) provides, "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2) (West 1994).

For the State to prove the second element, the *mens rea* requirement, it was required to show that appellant harbored the specific intent to promote or assist the commission of the offense. *See* Tex. Penal Code Ann. § 7.02(a)(2). Stated another way, the evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose. *See Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986). For the third element, the State had to prove that appellant did some act to assist Ludwick or Kotaska.

### 1. Legal Sufficiency

The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Villalon v. State*, 791 S.W.2d 130, 132 (Tex. Crim. App. 1990). In our review of the legal sufficiency of the evidence, we must consider all the evidence that the jury was permitted, properly or improperly, to consider. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Whether the evidence meets the standard set out in *Jackson* is a question of law. *Clewis v. State*, 922 S.W.2d 126, 132 (Tex. Crim. App. 1996).

By his thirty-seventh point of error, appellant claims that the evidence is insufficient because there is no evidence that an agreement was ever formed between appellant and Ludwick or Kotaska. Appellant argues that "he did absolutely nothing by way of acts, words, or other agreement that would have encouraged the commission of any crime against Cavness."

Evidence is legally sufficient to support a conviction under section 7.02(a)(2) where the actor is physically present at the commission of the offense and encourages the commission of the

offense "either by words or other agreement." *Burdine*, 719 S.W.2d at 315; *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose. *Burdine*, 719 S.W.2d at 315. In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Id*.; *Beier v. State*, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985).

By appellant's own admission, he knew of Ludwick's plan to rob Cavness and to accomplish the robbery by hitting Cavness over the head. Appellant then went with Ludwick and Kotaska to Cavness's house, taking his knapsack with him. The hammer used to kill Cavness was kept by appellant in his knapsack. He also retrieved the hammer after the killing and washed off the knife. Appellant maintained and provided the murder weapon–a clear contribution to the common purpose of robbing Cavness.

Viewing the record in favor of the jury's verdict, we hold that there was legally sufficient evidence to find appellant guilty under section 7.02(a)(2) and overrule appellant's thirty-seventh point of error.

2. Factual Sufficiency

When conducting a factual-sufficiency review, we do not view the evidence in the light most favorable to the verdict. *Johnson v. State*, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000). Instead, we consider all evidence in a neutral light. *Id*. However, we do not substitute our judgment for that

8

of the jury and will set aside a verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 7; *Clewis*, 922 S.W.2d at 129.

By his thirty-eighth point of error, appellant argues that the evidence is factually insufficient to support conviction under section 7.02(a)(2). Appellant claims that he never agreed to go along with any plan to rob Cavness. He also points to the testimony of Ricardo LaGrange, an inmate of the Travis County jail at a time when Ludwick was incarcerated there. LaGrange wrote to the Travis County District Attorney about his conversations with Ludwick and testified that Ludwick admitted to committing the murder alone. LaGrange also testified that Ludwick had completely disavowed any prior plan between himself and the person with him at the time of the murder and that Ludwick did it himself "all of a sudden."

Appellant also stresses the testimony of Coulter that portrayed appellant as sick, tired, and reluctant to pack and leave the morning of the January 17. Coulter stated that appellant was employed, but Ludwick and Kotaska were not. Coulter also said that appellant was polite, respectful, and well-groomed. Two of Coulter's neighbors testified that they spent a lot of time with appellant in the days before appellant left Austin. One of the neighbors testified that she saw Ludwick and Kotaska loading a truck in the early morning of January 17. Coulter and the two neighbors all met appellant for the first time approximately three days before Cavness was killed.

However, the record also contains evidence from appellant himself about his knowledge before the attack, his safekeeping of one of the murder weapons, his theft from Cavness's house after Cavness was dead, and his departure from Austin with Ludwick and Kotaska. Viewing these facts neutrally, we do not find the jury's verdict to be contrary to the overwhelming weight of

9

the evidence as to be clearly wrong and unjust; therefore, we overrule appellant's thirty-eighth point of error.

B. *Section 7.02(b)*

To convict appellant as a party under section 7.02(b), the State must prove (1) appellant conspired with others to commit an aggravated robbery and (2) one of the co-conspirators intentionally or knowingly (3) caused the death of an individual (4) in the course of committing or attempting to commit the aggravated robbery (5) in furtherance of the unlawful purpose of the conspiracy, (6) which should have been anticipated as a result of carrying out the conspiracy.[4] *See Ruiz v. State*, 579 S.W.2d 206, 209 (Tex. Crim. App. 1979).

1. Legal Sufficiency

By his thirty-ninth point of error, appellant argues that the evidence is legally insufficient to sustain the allegation that he was a party to capital murder under section 7.02(b) because there is no evidence that an agreement was ever formed between appellant and Ludwick or Kotaska. Viewing the evidence in the light most favorable to the jury's verdict, we must determine

---

[4] Section 7.02(b) provides,

> If, in an attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id*. § 7.02(b).

10

whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *See Jackson*, 443 U.S. at 319.

The record shows that Ludwick told appellant about a plan to rob Cavness. The record also shows that appellant carried a hammer, one of the murder weapons, in his knapsack. After Cavness's murder, appellant retrieved the hammer, washed off the knife used in the attack, and left the house with the hammer. Viewing this evidence in a light favorable to the jury's verdict, we hold that the jury could find beyond a reasonable doubt that appellant conspired to rob Cavness.

We overrule appellant's thirty-ninth point of error.

2. Factual Sufficiency

By his fortieth point of error, appellant complains that the evidence was factually insufficient to prove criminal liability under section 7.02(b) of the penal code. We must consider all evidence in a neutral light and may set aside a verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 6-7.

As we have noted, the record reveals that appellant was told by Ludwick of a plot to rob Cavness. After being told of the plan, appellant left with Ludwick, Kotaska, and Cavness, carrying the hammer with him. Appellant's actions after Cavness was killed are consistent with the actions of a willing participant. He washed off the knife. He retrieved the hammer. He took things from Cavness's house. He then left Austin with Ludwick and Kotaska. When Cavness's truck was abandoned in El Paso, it was appellant who was seen getting out of the driver's side of the vehicle. When appellant was arrested, he still had a watch taken from Cavness's house. The only evidence that tends to prove his unwillingness to participate in the robbery of Cavness is his own statement that

11

he told Ludwick, "I'm not doing nothing." Jurors are free to place whatever value they wish upon a defendant's own testimony or statements. *See Wesbrook v. State*, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000). We hold that the jury's verdict is not so contrary to the overwhelming weight of the evidence to be clearly wrong or unjust; therefore, we overrule appellant's fortieth point of error.

### *Errors in Indictment*

By his eleventh through sixteenth points of error, appellant argues that the district court committed reversible error when it "submitted the case to the jury on two different theories of party liability, neither of which were alleged in the indictment, after granting a directed verdict on the indictment allegation of individual responsibility." The indictment alleged that appellant,

> while in the course of committing and attempting to commit the offense of robbery, intentionally cause[d] the death of an individual, namely, John Davis Cavness, Jr., by cutting John Davis Cavness, Jr. with a knife, a deadly weapon, and by striking John Davis Cavness, Jr. with a hammer, a deadly weapon.

Thus, the indictment alleged that appellant acted as an individual, basing his responsibility on his own actions. But the State conducted *voir dire* on three theories of capital murder—individual liability for his actions alone, liability under section 7.02(a)(2), and liability under section 7.02(b). *See* Tex. Penal Code Ann. § 7.02(a)(2), (b). At the close of the State's case, the appellant requested a directed verdict on the indictment.[5] That motion was granted by the district court as to appellant's liability

---

[5]  Appellant raised this issue at various points; he filed a motion to force the State to elect a theory of liability, two motions to quash the indictment, a motion to exclude "party liability" from the trial, a motion to dismiss the indictment, and objections to the court's charge. These were either denied or overruled by the district court.

as an individual actor. Appellant argues that because the indictment only alleged liability as an individual actor and that allegation "had been directed out of the case by the court and there was nothing left from the indictment to submit to the jury."

The court of criminal appeals has held that if the evidence supports a charge based on criminal responsibility for the actions of another, the court may submit such a charge even though there is no such allegation in the indictment. *Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978). In *Pitts*, the indictment alleged that the defendant had attempted to "intentionally or knowingly cause the death of" an individual but did not allege culpability through the actions of another. *Id*. at 899. The charge submitted to the jury included instructions on capital murder, attempt, intent, knowledge, "the law of parties or criminal responsibility for the acts of another, criminal conspiracy, and renunciation of a conspiracy." *Id*. Thus the facts in *Pitts* are similar to the facts before us; the difference being that a directed verdict was granted on the indictment allegation in this case. We hold that this difference is not significant and *Pitts* should be applied in this case. Because the evidence raised the issue of appellant's guilt as a party, we hold that the district court did not err by authorizing appellant's conviction as a party pursuant to section 7.02.

We overrule appellant's eleventh through sixteenth points of error.

### *Unanimity of Jurors*

By his first through tenth points of error, appellant argues that the district court erred in submitting the case to the jury without requiring the jury to agree on which subsection of 7.02 was applicable to appellant. The charge was submitted in two separate application paragraphs joined by "or." The State's closing argument to the jury included the statement, "Now, this doesn't mean when

you get back to the jury room that you necessarily have to argue [over] which theory is correct." The State continued, "Each of you has to satisfy yourself under one or the other that Mr. Hanson is guilty of capital murder, but you don't all have to agree on one or the other." All of appellant's objections to the State's argument and to the jury charge on this ground were overruled.

Appellant argues that the failure to require all twelve jurors to agree on which theory of party liability applied to appellant violated the United States and Texas Constitutions and the Texas Penal Code. *See* U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 19, art. V, § 13; Tex. Penal Code Ann. § 2.01 (West 1994). The Sixth Amendment guarantees a right to trial by jury while the Fourteenth Amendment houses due process protections, which the Supreme Court has determined require juries to find every element of a charged offense beyond a reasonable doubt. *See* U.S. Const. amends. VI, XIV; *In re Winship*, 397 U.S. at 364. The penal code also requires that "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." Tex. Penal Code Ann. § 2.01. The Texas Constitution includes its own due course of law protection and the requirement that a defendant charged with a felony may only be convicted by a unanimous jury. *See* Tex. Const. art. I, § 19, art. V, § 13.

We conclude that the jury was allowed to convict appellant without agreeing on liability under either 7.02(a)(2) or 7.02(b). We find no case directly on point. However, several cases may be analogized to provide help in addressing this issue. First the United States Supreme Court held in *Schad v. Arizona* that a state can permit a jury to return a general verdict of guilty without agreeing that the defendant had committed either premeditated murder or felony murder. *Schad v. Arizona*, 501 U.S. 624, 632, 651 (1991). Though it was a divided court, including plurality,

14

concurring, and dissenting opinions, the plurality seems willing to allow states to determine, within due process constraints, what constitutes different offenses. *See id.* at 632.[6] If a person is charged with two different offenses, he may only be convicted of both offenses by a jury that *unanimously* agrees that the State has proven *every* element of *each* offense beyond a reasonable doubt. *See id.* Thus, when a defendant is tried for two *different* and *separate* offenses, a general jury charge including both offenses submitted in the disjunctive would be inappropriate. *See id.* In *Schad* premeditated murder and felony murder were not different or separate offenses; as defined by Arizona's penal code, both were part of the single crime of first-degree murder. *See id.* at 630. The Court held this to be a permissible characterization even though premeditated murder and felony murder involve "alternative mental states." *Id.* at 632. We note that the Texas Court of Criminal Appeals had previously allowed a general verdict when faced with the same issue. *See Aguirre v. State*, 732 S.W.2d 320, 325-26 (Tex. Crim. App. 1982).

The court of criminal appeals has also held that a defendant charged with capital murder is not entitled to unanimity as to which of two different underlying felonies—rape or robbery—the jury found from the evidence. *Kitchens*, 823 S.W.2d at 258. Kitchens asserted that all twelve jurors had to either find that he committed rape or robbery (or both) to convict him of capital murder. The jury charge included an alternative submission of murder in the course of

---

 [6] The plurality even framed the question as one addressing the defining of crimes rather than one dealing with the unanimity of a jury. *See Schad v. Arizona*, 501 U.S. 624, 630-31 (1991) ("[P]etitioner's real challenge is to Arizona's characterization of first-degree murder as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argues that premeditated murder and felony murder are separate crimes as to which the jury must return separate verdicts.").

15

committing robbery or sexual assault; thus, each juror was allowed to vote guilty if he or she found that Kitchens committed or attempted to commit either underlying felony. *Id*. at 257. The court rejected Kitchens's argument that such a charge concealed a verdict that was not unanimous. *Id*. at 258. The court stated, "It is appropriate where the alternative theories of committing the *same offense* are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted." *Id*. (emphasis added). The court continued that a jury need not agree on the "preliminary factual issues which underlie the verdict." *Id*. (quoting *Schad*, 501 U.S. at 632).

In addition, the court of criminal appeals has held a jury charge that allowed the jury to find a defendant guilty based on either his own actions or the actions of another (liability as a party) was not erroneous. *Goff v. State*, 931 S.W.2d 537, 544-45 (Tex. Crim. App. 1996). Although the objection in *Goff* was not raised in the same manner appellant raises it here, the opinion indicates that the court of criminal appeals is not troubled by such a submission. *See id*.

The law regarding jury unanimity appears to be that unanimity is required as to the offense committed but not as to the particular method or means of committing any one offense. Thus, if a jury is authorized to convict a defendant of either of two different offenses, the jury must unanimously agree as to which offense, if either, the defendant committed. But if a jury is authorized to convict a defendant on a finding that he committed a single offense in either of two different ways, the jury need not unanimously agree as to which method of commission the defendant actually employed.

16

Here appellant was charged with the single offense of capital murder. The district court's jury charge, authorizing appellant's conviction on a finding that he either assisted another to commit the offense (section 7.02(a)(2)) or conspired with another who committed the offense in furtherance of the conspiracy (section 7.02(b)), was analogous to the charge in *Kitchens*. The two alternate theories of party liability were merely alternate methods or means by which appellant committed the one charged offense. Jury unanimity as to which theory of party liability applied was not necessary, and the general verdict of guilt was proper so long as either theory was proved.

Appellant argues that because subsections (a)(2) and (b) of section 7.02 of the penal code assign criminal liability, they are offenses; and because they do not contain the same elements, they are different offenses. We disagree. Section 7.02 does not independently define criminal conduct or prescribe punishment therefor. Instead, section 7.02 enumerates the various ways in which a person can be held criminally responsible for another's criminal conduct, as that conduct is defined elsewhere in the code.

We conclude by noting that even if the district court did commit error, the error would be harmless because we have already determined that the evidence in the record was both factually and legally sufficient under either subsection of section 7.02. We overrule appellant's first through tenth points of error.

### *Motion to Quash the Indictment*

By his thirty-sixth point of error, appellant argues that section 19.03 of the penal code and article 37.071 of the code of criminal procedure violate the United States and Texas Constitutions. *See* Tex. Penal Code Ann. § 19.03; Tex. Code Crim. Proc. Ann. art. 37.071.

17

Specifically, he asserts that these statutes violate the Establishment Clause of the United States Constitution and article I, section 7 of the Texas Constitution because the author and sponsors of the bill creating those statutes "could not articulate a reasonable secular purpose for their enactment *but* did articulate, at length, the religious purpose for [capital] punishment while siding, in fact, with the viewpoint of a particular and identifiable religious sect." *See* U.S. Const. amend. 1; Tex. Const. art. I, § 7.

The court of criminal appeals has addressed the Establishment Clause argument in *Holberg v. State*, 38 S.W.3d 137 (Tex. Crim. App. 2000). The court rejected the argument, holding the statutes constitutional. *Id*. at 140. However, the defendant in *Holberg* did not raise the issue under the Texas Constitution as appellant has here.

Appellant argues that the capital-murder statutes enacted in 1973 in House Bill 200 "endorse the beliefs of fundamentalist Texas protestants over the beliefs of many other [religions]," thus violating the Texas Constitution. Article I, section 7 prohibits the expenditure of public funds to support a religion. Tex. Const. art. I, § 7. We find the court's discussion in *Holberg* of the legislative history of House Bill 200 instructive. *See id*. at 139. The bill's chief sponsor, Representative Cobb, stated that it should be enacted "because the people of Texas wanted the death penalty." Representative Leland, opposing passage of the bill, argued that "state executions violate[] the Ten Commandments' prohibition on killing." The co-sponsors of the bill, Represenatives Cobb, Williamson, and Hollowell, responded with citation to biblical passages that they asserted supported the death penalty. *Id*.

In the court's view,

18

it is at least as likely that the Legislature's actual purpose in enacting the statutes was the secular one of establishing the appropriate penalty for certain heinous crimes, and that the legislators acted as they did because they held one or more of the following reasonable, secular beliefs: (1) the death penalty is the only proportional punishment for certain crimes; (2) the death penalty ensures, at a minimum, that the offender will never harm anyone again; (3) the death penalty may deter some persons (professional criminals and those already imprisoned for life), and possibly others, from committing murder; and (4) life imprisonment without parole is not a viable alternative to the death penalty because (a) capital offenders are a danger to others in the prison environment, (b) persons imprisoned literally for life have little incentive to behave properly, and (c) it is undesirable, costly, and possibly inhumane to keep persons in prison until they actually die from old age or disease.

*Id*. at 140. We find the reasoning of the court of criminal appeals applicable to the issue of constitutionality under the Texas Constitution; there are ample secular purposes supporting the enactment of the code provisions at issue and their enforcement does not result in public funds being used for religious purposes. We overrule appellant's thirty-sixth point of error.

### Evidentiary Matters

#### A. Doctrine of Optional Completeness

By his seventeenth through twenty-third points of error, appellant argues that the district court committed error in refusing to rule upon his motion to preclude the State from invoking the doctrine of optional completeness. The State called Kotaska to testify during its case-in-chief. Although he had been granted use immunity, Kotaska refused to testify. The State then sought to introduce Kotaska's earlier testimony from Ludwick's trial. The appellant objected under Texas Rule of Evidence 804(b)(1) and the appellant's right to confront and cross-examine witnesses. *See* Tex. R. Evid. 804(b)(1) (excluding former testimony from hearsay rules if the party against whom it is offered or a person with a similar interest had an opportunity and similar motive to develop the

19

testimony by examination). Appellant's objection was sustained. At a later point appellant's counsel notified the court that he was considering offering portions of Kotaska's previous testimony, which he asserted were admissible against the State under rule 804(b)(1). Appellant's counsel informed the court that, if he did so, he expected the State to then seek to introduce Kotaska's entire testimony under the doctrine of optional completeness. Appellant's counsel made it clear that if the court were inclined to allow in the entire statement, appellant's counsel would not offer the portions of testimony. The district court refused to rule on optional completeness on the ground that such a ruling would be premature. Appellant did not introduce any portions of Kotaska's testimony. Appellant argues that the court's "failure to rule on the issue [affected] trial strategy and possibly render[ed] counsel ineffective because he could not make intelligent decisions without knowing whether the Court would follow the law."

The court of criminal appeals has rejected a defendant's right to an advance ruling. *See Boykin v. State*, 504 S.W.2d 855, 858 (Tex. Crim. App. 1974); *Gillon v. State*, 491 S.W.2d 893, 894 (Tex. Crim. App. 1973).

We overrule appellant's seventeenth through twenty-third points of error.

### B. Admissibilty of Prosecutor's Argument in Ludwick's Trial

By his twenty-fourth through twenty-sixth points of error, appellant argues that the district court erred in refusing to admit a portion of the State's argument in the capital murder trial of Ludwick. Appellant asserts that the State took a position in appellant's trial that was inconsistent with the State's position in Ludwick's trial. This Court has been unable to find any authority in this state that addresses the issue of the admissibility of a prosecutor's argument in a previous trial. We

20

will assume, for the sake of argument only, that a prosecutor's argument is admissible in a subsequent trial under Texas Rule of Evidence 801(e)(2). *See* Tex. R. Evid. 801(e)(2) (admission by party-opponent).

A portion of the argument that the appellant sought to introduce included the following:

> Now, in looking at the evidence in this case, it is real important to keep in mind the motives of the people who testified. . . . You heard that Mr. Kotaska was arrested quite a while later. Prior to his arrest, Mr. Ludwick and Mr. Hanson had already been arrested. Mr. Hanson, you heard through the witnesses, gave a statement saying I was sick, I was in a bedroom. When I came out, he was already dead, and you heard that Detective Gilchrest doubted that. He didn't believe that. Ten, 11, a long time later, Mr. Kotaska is arrested, and he tells the same story. Mr. Hanson was in that back bedroom. Why would he lie to protect Hanson when they barely knew each other[?]

The exclusion of this argument was harmless because appellant was granted a directed verdict on the indictment, which alleged his culpability as an actor. The State, ultimately, did not take a position inconsistent with this statement in appellant's trial. Therefore, the introduction of this evidence would merely be repetitive.

We overrule appellant's twenty-fourth through twenty-sixth points of error.

### Jury Charge and Instructions

#### A. Application Paragraph

By his thirty-fifth point of error, appellant contends that the district court erred in submitting the theory of party liability under section 7.02(b) in the application paragraph of capital murder. Appellant's counsel made the following objection during the charge conference:

21

But the objection is that under the Code Construction Act a general statute cannot overrule a specific statute. The legislature in 1903 (Section 19.03 of the Penal Code) specifically required an intentional causation of death, and here we have a general statute, the parties statute, modifying a specific statute, so under the Code Construction Act, I submit that is inappropriate. Secondly, it is totally inconsistent with the legislative history behind the reenactment of the capital murder statute, which was enacted back in House Bill 200. The Court has received as an attachment to motion to quash number one part of that. I would argue that it is unconstitutional, in violation of the legislative history of the capital murder statute as enacted as an additional objection, your Honor.

The district court overruled this objection.

The court of criminal appeals allows the application of section 7.02(b) to the offense of capital murder. *Fuller v. State*, 827 S.W.2d 919, 932-33 (Tex. Crim. App. 1992); *see Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). But appellant argues that no case has "addressed the concept that Section 19.03, properly interpreted in light of the Code Construction Act, renders application of Section 7.02 unconstitutional in violation of legislative intent." Appellant draws our attention to section 311.026[7] of the code construction act, which requires that if a general provision conflicts with a specific provision, the specific provision prevails. *See* Tex. Gov't Code Ann. § 311.026 (West 1998).

Section 311.026 is a codification of the doctrine of *pari materia*. *Burke v. State*, 28 S.W.3d 545, 547 n.2 (Tex. Crim. App. 2000). "The rule of pari materia is nothing more than a principle of statutory interpretation, a means of devining [sic] and giving full effect to legislative intent." *Id*. at 546-47 (quoting *Mills v. State*, 722 S.W.2d 411, 413 (Tex. Crim. App. 1986)). *Pari*

---

[7] "Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of Chapter 311, Government Code (Code Construction Act), apply to the construction of this code." Tex. Penal Code Ann. § 1.05(b) (West 1994).

*materia* requires that "[w]here one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail." *Id.* (quoting *Mills*, 722 S.W.2d at 413).

*Pari materia* only applies if the two statutes have the same purpose or object. *Id.* at 547. The statutes must be "closely enough related to justify interpreting one in light of the other." *Id.* (quoting *Alejos v. State*, 555 S.W.2d 444, 450 (Tex. Crim. App. 1977) (op. on reh'g)). To determine whether two statutes concern the same object, a court should look at whether the two statutes are contained in the same legislative act, whether the same elements of proof are required by the two statutes, whether they involve different penalties, and whether they were obviously designed to serve the same purpose and objective. *Id.* at 547-49 (quoting *Alejos*, 555 S.W.2d at 449) (holding that aggravated assault and intoxication assault are not in *pari materia*); *Cheney v. State*, 755 S.W.2d 123, 130 (Tex. Crim. App. 1988) (making false statement to obtain property or credit was not in *pari materia* with felony theft); *Alejos*, 555 S.W.2d at 450-51 (evading arrest and fleeing police office are not in *pari materia*).

Section 19.03 defines the offense of capital murder. Tex. Penal Code Ann. § 19.03. Section 7.02 defines party liability, liability which can be attached to any number of offenses committed by another person. Tex. Penal Code Ann. § 7.02. These sections do not have the same elements of proof and serve different purposes. Section 19.03 addresses the responsibility created by one's own actions, and in this case the district court's directed verdict signals that appellant likely could not have been convicted of capital murder under section 19.03. However, section 7.02 is

23

designed to assign culpability to participants like appellant–who are not the primary actor. We hold that sections 7.02 and 19.03 are not in *pari materia* and overrule appellant's thirty-fifth point of error.

### B. Instructions on Lesser Included Offenses

Appellant argues that he was entitled to a jury charge on the lesser included offenses of theft and conspiracy to commit robbery. To be entitled to a charge on a lesser included offense, a two pronged test must be satisfied. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981). First, the lesser included offense must be included within the offense charged. *Rousseau*, 855 S.W.2d at 673. Second, there must be some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty of only the lesser offense. *Id*. Appellate courts should review all the evidence presented at trial in making this determination. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

#### 1. Theft

By his thirty-first and thirty-second points of error, the appellant argues that the district court erred in failing to include the lesser included offense of theft in the jury charge. Because the State does not argue that the first prong of the test is not satisfied, we will analyze only whether there was some evidence in the record that would have permitted the jury to rationally find that if appellant was guilty, he was guilty only of theft. Appellant argues that his own statement shows that he did not want to join Ludwick and Kotaska in robbing Cavness and that he only committed a post-

homicide theft. Appellant also draws attention to the fact that there is no evidence that appellant actually hit or cut Cavness.

By appellant's own account, Ludwick told him of the plan to rob Cavness, including his intent to hit Cavness over the head. Appellant makes clear in his statement that he and Ludwick had planned on going to Los Angeles and that the two did not have any money except for appellant's last paycheck[8] and money from the sale of Ludwick's stereo. In addition, the statement reveals that after the homicide appellant picked up the knife and washed it off in the sink and then retrieved the hammer that he had been carrying all of that day in his knapsack. Appellant then left Austin with Ludwick and Kotaska for Los Angeles, the city to which he and Ludwick planned to go.

We hold that there is no evidence in the record that would have permitted a jury to rationally find that appellant was guilty of only theft, and we overrule appellant's thirty-first and thirty-second points of error.

2. Conspiracy

By his thirty-third and thirty-fourth points of error, the appellant argues that the district court erred in failing to include the lesser included offense of conspiracy to commit robbery in the jury charge. Because the State does not dispute that conspiracy to commit robbery is a lesser included offense of capital murder as it was submitted to the jury pursuant to section 7.02(b), we will analyze only whether there was some evidence in the record that would have permitted the jury to rationally find that if appellant was guilty, he was guilty only of conspiracy to commit robbery.

---

[8] Appellant's last paycheck was $226.

Appellant again draws our attention to his statement, which includes his refusal to participate when told by Ludwick the plan to hit Cavness over the head and rob him.

If the appellant's statement is to be believed, then he would not be guilty of any offense under section 7.02(b) nor would he be guilty of conspiracy to commit robbery—the very offense he urges should have been included in the jury charge. Because the evidence would not allow a rational finding that, if guilty, appellant was guilty only of conspiracy to commit robbery, a jury instruction on the lesser included offense was not warranted.

We overrule appellant's thirty-third and thirty-fourth points of error.

## C. Concurrent Cause

By his twenty-seventh and twenty-eighth points of error, appellant argues that the district court erred in denying his request for a jury instruction on concurrent cause. *See* Tex. Penal Code Ann. § 6.04(a) (West 1994). The penal code states, "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.*

Appellant argues that "there was absolutely no evidence that [he] ever hit or cut the victim, which is why the trial court granted a directed verdict on the indictment allegation," and he relies on two cases. In the first case, the defendant, who was convicted of murder with a deadly weapon, shot the victim in the shoulder area, "leaving extensive damage." *Hutcheson v. State*, 899 S.W.2d 39, 41 (Tex. App.—Amarillo 1995, pet. ref'd). Upon hearing that shot, one of two police officers, arriving at the scene only moments before and thinking that he and his partner were under

26

attack, shot the victim, hitting him below the rib cage. *Id.* The court of appeals determined that the trial court did not err in failing to include concurrent cause in the jury charge because the defendant failed to prove that her conduct was clearly insufficient to cause the death of the victim. *Id.* at 42.

Appellant also draws our attention to *McFarland v. State*, a case that he contrasts from the facts here. 928 S.W.2d 482, 515-16 (Tex. Crim. App. 1996). Appellant summarizes *McFarland* as follows:

> [T]here was a murder committed during the course of a robbery. The defendant and his accomplice each fired two shots (a total of four shots). Three of the bullets caused fatal wounds. Accordingly, the Court held that the defendant was not entitled to an instruction on concurrent causation because the defendant must have fired at least one fatal shot.

Neither of these cases is dispositive, and appellant fails to direct this Court to a case involving the application of concurrent cause to a defendant being prosecuted under section 7.02. Appellant was found liable for the acts of Ludwick and Kotaska. There is no question that the acts of Ludwick and Kotaska caused the death of Cavness.

We overrule appellant's twenty-seventh and twenty-eighth points of error.

### D. Independent Impulse

By his twenty-ninth and thirtieth points of error, appellant contends that the district court erred in failing to submit his requested instruction on "independent impulse." A charge on "independent impulse" is a defensive instruction allowing the jury to acquit a defendant if it finds, or has reasonable doubt, that the defendant did not and reasonably could not have anticipated the commission of the actual offense. *Mayfield v. State*, 716 S.W.2d 509, 513 (Tex. Crim. App. 1986).

Relying on *Mayfield*, appellant contends that he is entitled to such an instruction because he was charged with conspiracy liability and the evidence shows that appellant did not contemplate the extent of criminal conduct ultimately committed by Ludwick and Kotaska. *See id.*

We need not decide whether appellant was entitled to the requested instruction under *Mayfield* because that opinion is no longer viable in light of the court's more recent decision in *Solomon v. State*, No. 73,459, slip. op. (Tex. Crim. App. June 20, 2001). In *Solomon,* the court stated that "there is no enumerated defense of 'independent impulse' in the [Texas] Penal Code, and appellant's proposed defensive issue would simply negate the conspiracy liability element of the State's case." *Id*. at 17. Thus, the inclusion of this defense "would be superfluous, and in fact, would be an impermissible comment on the weight of the evidence." *Id*. (discussing *Giesberg v. State*, 984 S.W.2d 245, 248-51 (Tex. Crim. App. 1998)). The court continued, "All that is required, then, is for the appropriate portions of the jury charge to track the language of [section] 7.02(b)." *Id*.

In accordance with the law of conspiracy liability, the district court properly gave instructions in the abstract and applied the law to the facts, tracking the statutory language of section 7.02(b). We overrule appellant's twenty-ninth and thirtieth points of error.

### *Finding of Use of a Deadly Weapon*

By his forty-first point of error, appellant argues that the jury's affirmative finding that appellant used a deadly weapon in the commission of the offense "must be deleted from the judgment because the jury was not submitted this issue of whether the [appellant] used a deadly weapon." The State concedes this point; therefore, we sustain the appellant's forty-first point of error.

**CONCLUSION**

28

We modify the judgment to delete the finding of appellant's use of a deadly weapon and, as modified, affirm the judgment of the district court.

_____

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson.

Modified and, as Modified, Affirmed

Filed:   August 30, 2001

Publish