# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00034-CR

**Leopoldo Cerda, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF DALLAS COUNTY, 204TH JUDICIAL DISTRICT
### NO. F-0254103-Q, HONORABLE PAT MCDOWELL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Leopoldo Cerda was charged with delivery of cocaine. *See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .112 (West 2003 & Supp. 2004). The jury charge included an instruction on the law of parties, and the jury returned a guilty verdict. *See* Tex. Pen. Code Ann. § 7.02(a) (West 2003). Appellant argues on appeal that the evidence is legally and factually insufficient to support his conviction. We affirm the judgment.

Undercover police officer Mark Underwood testified that in August 2002 he worked with a paid informant named Nicholas Desimone to arrange for Underwood to buy two ounces of cocaine. Underwood had worked with Desimone, who is a crack addict, for about seven years. Underwood said this was to be a "buy-walk buy," where an undercover officer buys the drugs and walks away, and other officers arrest the dealers "down the road or wherever." On August 22,

Underwood and three surveillance officers went to the location specified by Desimone and waited for a gray Mercury automobile. The car pulled up with Desimone in the back seat, Cesar Palacio driving, and appellant in the front passenger seat. Underwood, who was carrying $1,000 in marked bills, got into the back seat behind the driver.[1] Underwood testified that he asked if the cocaine was going to be "in rocks," and appellant answered that it was in powder. Underwood said, "No, I meant is it going to be in chunks," and appellant assured Underwood that it was in chunks and not cut up, a sign that the cocaine was "good dope." Palacio handed Underwood a piece of folded tin foil containing nearly two ounces of cocaine. Underwood then began to haggle over the price for the cocaine, saying he did so for two reasons: (1) "[d]rug dealers always haggle over price," and a dealer knows something is wrong if a buyer pays and leaves without trying to get a better price; and (2) Underwood was trying to see what appellant's role was in the drug deal. Underwood testified that appellant refused to reduce the price from $1,000, telling Underwood that "they couldn't come down but that they would—if I bought from them again that they would take better care of me next time." Underwood gave the money to Palacio, and he and Desimone got out of the car and walked away. The surveillance officers then stopped and arrested appellant and Palacio. Asked what role appellant played in the drug deal, Underwood answered, "I couldn't decide whether he was basically running it. He's definitely a partner in the—in the transaction. I couldn't see who was—who was the main character in it, if there was one."

---

[1] Underwood said he was also carrying a small recorder, but the recorder did not record properly. He said he had not used the recorder before and has never used it since.

Underwood testified that he had been a police officer for more than twenty years, and had been in narcotics for about ten years. He uses informants to arrange drug buys because he needs such people to gain drug dealers' trust. He said to gain a drug dealer's trust, he has to start small and make several small buys to gain the dealer's confidence. Two other officers involved in the arrest testified about their observations of the drug buy from a distance and the arrest of Palacio and appellant. One officer testified that Palacio had the $1,000 in marked bills in his possession upon his arrest, and another stated that he did not find weapons on Palacio or appellant when he patted them down after stopping their car.

Appellant contends that the evidence is legally and factually insufficient, arguing in part that there was no direct or constructive delivery, either as a principal or party. We disagree.

In reviewing the evidence for legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In evaluating the factual sufficiency of the evidence, we view all of the evidence in a neutral light and will set aside a verdict only if the proof of guilt is so obviously weak or so greatly outweighed by contrary evidence as to undermine confidence in the verdict. *Id*. at 11. We must be appropriately deferential to the jury's judgment and should not substantially intrude upon the jury's role as the sole judge of the weight and credibility given to witness testimony. *Id.* at 7.

A person commits the offense of delivery of a controlled substance if he actually or constructively transfers or offers to sell a controlled substance to another person. Tex. Health &

3

Safety Code Ann. § 481.002(8) (West Supp. 2004); *see Thomas v. State*, 832 S.W.2d 47, 50-51 (Tex. Crim. App. 1992). "'[A]ctual transfer' occurs when the defendant transfers actual possession and control of a controlled substance to another person." *Thomas*, 832 S.W.2d at 51. "'[C]onstructive transfer' occurs when the defendant transfers a controlled substance, either belonging to him or under his control, by some other person or means, at the direction of the defendant." *Id.*; *see generally Sims v. State*, 117 S.W.3d 267 (Tex. Crim. App. 2003) (discussing actual and constructive transfer).

Appellant was indicted for delivery of a controlled substance under all three theories, and the jury charge set out all three theories. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) ("alternate pleading of the differing methods of committing one offense may be charged in one indictment"); *Geter v. State*, 779 S.W.2d 403, 406 (Tex. Crim. App. 1989) ("indictment for delivery of a controlled substance must allege whether the delivery is an offer to sell, constructive, or actual, or any disjunctive combination of the three"). The jury returned a general verdict. Therefore, we will affirm the judgment if the evidence is sufficient to support a finding under any of the three methods submitted. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Cano v. State*, 3 S.W.3d 99, 106 (Tex. App.—Corpus Christi 1999, pet. ref'd).

A person may be held criminally responsible for an offense committed by another if, intending to assist the commission of the offense, he solicits, encourages, directs, or aids the other person in the commission of the offense. Tex. Pen. Code Ann. § 7.02(a)(2). The law of parties applies to a prosecution for delivery of a controlled substance. *See Boyer v. State*, 801 S.W.2d 897, 899 (Tex. Crim. App. 1991); *Robinson v. State*, 815 S.W.2d 361, 363 (Tex. App.—Austin 1991, pet.

4

ref'd). The law of parties allows a conviction "where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g); *see Hanson v. State*, 55 S.W.3d 681, 689 (Tex. App.—Austin 2001, pet. ref'd). The evidence must show that the parties were acting together at the time of the offense, each contributing toward the execution of their common purpose. *Hanson*, 55 S.W.3d at 690. A court may look to events occurring before, during, and after the commission of the offense, and to a defendant's acts showing an understanding and common design to commit the offense. *Ransom*, 920 S.W.2d at 302; *Hanson*, 55 S.W.3d at 690.

The evidence shows that appellant and Palacio drove to the drug deal together. Appellant did most of the talking and negotiating with Underwood, describing the form of the cocaine and telling Underwood that *they*, implying Palacio and appellant, would not lower the price of the drugs during this buy but that *they* would take care of Underwood the next time he bought drugs from *them*. Palacio physically handed the drugs to Underwood, and the money was in Palacio's possession when he and appellant were arrested. There is evidence that there was actual delivery of cocaine from Palacio to Underwood and that appellant was acting to encourage, assist, or participate in the delivery. Whether the evidence is viewed in a neutral light or in the light most favorable to the verdict, a rational jury could have found that appellant acted as a party to the actual delivery of cocaine, and such a finding is not so obviously weak or greatly outweighed by contrary evidence as to undermine confidence in the verdict. *See Johnson*, 23 S.W.3d at 7. Having found the evidence sufficient to support one theory of delivery, we need not discuss the sufficiency of the

5

evidence supporting the other theories.  *See Medina*, 7 S.W.3d at 630.  We overrule appellant's issues on appeal and affirm the judgment.

 

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   December 18, 2003

Do Not Publish