**Affirmed and Memorandum Opinion filed January 7, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00095-CR

**QUENTORIUS TREMAINE SIMMONS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 27th District Court
Bell County, Texas
Trial Court Cause No. 78917**

## MEMORANDUM OPINION

In this appeal from a conviction for capital murder, appellant argues that the evidence is legally insufficient to support the conviction and that the trial court erred by submitting a jury instruction on the law of parties. Because we conclude that there was sufficient evidence to both raise the issue of party culpability and convict appellant as a party to capital murder, we overrule each of appellant's arguments and affirm the trial court's judgment.

# BACKGROUND

Three men broke into a home at night, and one of them shot the complainant in the living room. A neighbor heard the shooting and called the police. As the neighbor waited for the police to arrive, she saw two of the three men tussling in the driveway of the complainant's home. The men eventually got into different cars and drove away.

The police arrived on scene to find the front door kicked in and the complainant unresponsive on the floor, bleeding from a single gunshot wound to the chest. The police initiated life-saving procedures, but the complainant ultimately succumbed to his injuries.

In the course of securing the scene, the police also encountered Chakira Floyd, the complainant's girlfriend, who was visibly in shock. Floyd later explained that she had been at home at the time of the shooting, but she did not see any of the intruders. She had been asleep during the break in, and she was awoken when two of the intruders entered her bedroom and began nudging her and asking her where the complainant kept his money. Too afraid to move, she never lifted her head from the pillow. She knew that the complainant was a drug dealer, but she did not know where he hid his cash. She heard the men rummaging through her belongings and ransacking her room, until they all suddenly ran out. When she inspected the home later, she noticed that the intruders had taken a PlayStation console, but they had left the power cord behind.

The police developed a lead in the case after finding a gallon-sized bag of marijuana outside the front door, which was believed to have been taken during the break in. An analysis of the bag yielded a fingerprint, which was positively linked to appellant.

Appellant was apprehended several months later and charged with capital murder. He pleaded not guilty, and his case proceeded to a trial by jury.

During the trial, the prosecution was unable to identify any of the men involved in the capital murder, other than appellant. Also, the prosecution did not produce any direct evidence that appellant was the principal actor who shot the complainant. Instead, the prosecution relied on circumstantial evidence that appellant was a party to the offense.

The circumstantial evidence began with the testimony from Floyd, who recounted what she had initially told the police. She added that she did not see anything in the driveway when she returned home that evening, which suggested that the bag of marijuana that had been found there by the police must have been dropped by the intruders as they were fleeing the scene. She also said that she did not know appellant or ever recall seeing him in her home with the complainant.

The prosecution then turned to the testimony of Chase Cope, who provided temporary housing for appellant. According to Cope, appellant mentioned that he was wanted for questioning in the complainant's capital murder. Appellant told Cope that he was innocent, but he admitted that he was present for the offense. He said that he was at the complainant's house playing video games when the three intruders broke in.

Even though Cope repeatedly asserted his own personal belief that appellant was innocent, Cope still described other conversations that implicated appellant in the offense. For example, according to Cope, appellant knew the name of the shooter and that the murder weapon had been tossed in a lake. Also, appellant admitted that he took the bag of marijuana and dropped it outside. Appellant likewise admitted that he took the PlayStation and eventually had it pawned by "a Mexican guy."

Additional testimony about the PlayStation was elicited from Marica Campbell, who was appellant's ex-girlfriend. She testified that appellant texted her shortly after the capital murder, asking if he could give a PlayStation to her children. She agreed, but she said that the PlayStation was lacking a power cord, which she had to purchase herself.

Campbell also testified that appellant later reclaimed the PlayStation without any sort of warning. A police detective explained that appellant likely reclaimed the PlayStation and then disposed of it because a media release indicated that the authorities were actively searching for it.

Using a serial number, the detective was eventually able to track the PlayStation to a pawn shop. The pawn ticket showed that the PlayStation had been pawned by a man with a Hispanic surname, which is consistent with Cope's testimony that appellant had the PlayStation pawned by "a Mexican guy."

Appellant did not testify during the trial. His only defense witness was a prosecutor who testified that Cope, who was facing a criminal charge of his own, should receive favorable consideration in his separate case because Cope cooperated with the prosecution against appellant.

**ANALYSIS**

Appellant raises several points within his sufficiency issue, with the common theme being that there is no evidence that he was the principal actor who murdered the complainant. But we need not determine whether the evidence was sufficient to convict appellant as a principal if we can determine instead that there was sufficient evidence to convict him as a party. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) ("When the charge authorizes the jury to convict the defendant on

4

more than one theory, as it did in this case, the verdict will be upheld if the evidence is sufficient on any theory authorized by the jury charge.").

Appellant likewise contends that there is insufficient evidence to convict him as a party, and because of that alleged insufficiency, he argues in his second issue that the trial court reversibly erred by submitting a charge instruction on the law of parties. We consider this charge error complaint together with appellant's sufficiency challenge, because if there was sufficient evidence to raise the law of parties, then the trial court's charge could not be erroneous and the conviction may be upheld on the theory of party culpability. *See Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999) ("In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties.").

The conviction can be upheld on a theory of party culpability if there was sufficient evidence that a capital murder was committed by a principal actor other than appellant, and that appellant solicited, encouraged, directed, aided, or attempted to aid that principal actor with the intent to promote or assist in the commission of the capital murder. *See* Tex. Penal Code § 7.02(a)(2). When deciding whether these essential elements were proven beyond a reasonable doubt, we consider all of the evidence in the light most favorable to the jury's decision. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

As a threshold matter, we note that there was an abundance of evidence that a capital murder was committed by a principal actor. The record established that the complainant was shot and killed during the course of a home invasion and robbery where property was actually taken. *See* Tex. Penal Code § 19.03(a)(2) (defining a capital murder as an intentional murder committed during the course of a burglary or robbery).

5

The prosecution produced no direct evidence that appellant was the principal actor, but such evidence was unnecessary because the record supported a finding that appellant at least aided in the commission of the capital murder. This finding is based on the cumulative force of several witness statements and the reasonable inferences that can be made from those statements.

The analysis begins with the testimony of Chakira Floyd, who was present during the home invasion. She testified that there was more than one intruder, and that they were jointly searching for the complainant's money and other valuables. Because a rational person could determine that this joint action by the intruders was intended to assist in the commission of a burglary or robbery, which was an essential element of the capital murder, the jury could have likewise concluded that all of the intruders were criminally responsible as parties to the capital murder. *See Hanson v. State*, 55 S.W.3d 681, 688–90 (Tex. App.—Austin 2001, pet. ref'd) (holding that the defendant was culpable as a party to capital murder where there was legally sufficient evidence that the defendant knew about the plan to rob the complainant, the defendant took property from the complainant, and the defendant provided the weapon that was used to kill the complainant).

The jury could have also concluded that appellant was one of these intruders because his fingerprint was found on a gallon-sized bag of marijuana in the complainant's driveway. The jury could have reasonably determined that this bag had belonged to the complainant, a known drug dealer, because the bag contained more marijuana that what is traditionally kept for personal use. Also, because Floyd testified that she did not see anything in the driveway in the hours before the capital murder, the jury could have reasonably determined that appellant took the bag during the course of the capital murder, and that he dropped it outside as he was fleeing the scene.

6

Appellant responds that the jury could only speculate that he was one of the intruders because there was no explanation for how or when his fingerprint was left on the bag. But this point is squarely resolved by the testimony of Chase Cope, who said that appellant admitted to taking the bag on the night of the capital murder. According to Cope, appellant also admitted to dropping the bag. The jury could have reasonably accepted this testimony because it comports with the testimony from the neighbor, who said that the intruders were tussling in the driveway and that they fled the scene in a hurry. Even though the neighbor did not specifically see the intruders carrying anything, the neighbor's description of tussling provides a logical explanation for how the bag could have fallen out of appellant's hands.

Appellant also suggests in his brief that the jury could not reasonably accept Cope's testimony because Cope was a felon and he had an incentive to lie. But these points merely attack the weight and credibility of the evidence, which we do not reevaluate in a sufficiency analysis. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

Even without Cope's testimony, the jury could have determined that appellant was one of the intruders based on the evidence surrounding the PlayStation. Floyd testified that the intruders took the complainant's PlayStation, minus the power cord, which had been left behind, still plugged in the wall. And Marica Campbell, appellant's ex-girlfriend, testified that appellant delivered a PlayStation to her children shortly after the capital murder occurred. Because Campbell further testified that the gifted PlayStation was missing a power cord, the jury could have reasonably concluded that the PlayStation that appellant had given her children was the same PlayStation that had been taken in the capital murder. That conclusion is strengthened by the other evidence that appellant reclaimed the PlayStation after a media release alerted the public that the authorities were actively searching for the

7

PlayStation. The jury could have reasonably determined that appellant reclaimed the PlayStation and then pawned it through a third party as a means of distancing himself from the capital murder.

Based on all of this circumstantial evidence, we conclude that there was sufficient evidence to raise the issue of party culpability, which means that the trial court did not err in submitting a charge instruction on the law of parties. And based on the same set of circumstantial evidence, we further conclude that there was sufficient evidence from which a rational jury could conclude that appellant aided in the commission of the capital murder, thereby making him criminally responsible as a party.

## CONCLUSION

The trial court's judgment is affirmed.

/s/      Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

Do Not Publish – Tex. R. App. P. 47.2(b).