ACCEPTED
13-13-00541-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
1/28/2015 11:05:23 AM
DORIAN RAMIREZ
CLERK

**Cause No. 13-13-00541-CR**

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT
AT CORPUS CHRISTI-EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
1/28/2015 11:05:23 AM
DORIAN E. RAMIREZ
Clerk

-----------------------------------------------------------------------------------------------

**GRACIELA CASAS ARJONA, APPELLANT**

**v.**

**THE STATE OF TEXAS, APPELLEE**

-----------------------------------------------------------------------------------------------

APPEAL OF JUDGMENT IN CAUSE NO. CR-2968-11-B
FROM THE 93RD JUDICIAL DISTRICT COURT
OF HIDALGO COUNTY, TEXAS
THE HONORABLE JUDGE RUDY DELGADO, PRESIDING

-----------------------------------------------------------------------------------------------

**BRIEF OF THE STATE OF TEXAS/APPELLEE**

-----------------------------------------------------------------------------------------------

RICARDO RODRIGUEZ, JR.
Criminal District Attorney
Hidalgo County, Texas

LUIS A. GONZALEZ, ASSISTANT
Criminal District Attorney
Hidalgo County, Texas

HIDALGO COUNTY COURTHOUSE
Edinburg, TX 78539
Telephone #:  (956) 318-2300, ext. 750
Facsimile #:  (956) 380-0407
luis.gonzalez@da.co.hidalgo.tx.us
State Bar No. 24083088

ATTORNEYS FOR APPELLEE

ORAL ARGUMENT WAIVED

1

## IDENTIFICATION OF PARTIES AND COUNSEL

APPELLEE certifies that the following is a complete list of the parties, attorneys, and all other interested persons regarding this matter:

APPELLANT in this case is GRACIELA CASAS ARJONA.

APPELLANT was represented in the trial court by ROBERT CAPELLO, 101 N. 10th Ave., Edinburg, TX 78541; and ROEL ESQUIVEL, 114 S. 12th Ave., Edinburg, TX 78539.

APPELLANT is represented on appeal by Victoria Guerra, 320 W. Pecan Blvd., McAllen, TX 78504.

APPELLEE is the State of Texas, by and through RICARDO RODRIGUEZ JR., Criminal District Attorney, Hidalgo County, TX.

APPELLEE was represented in the trial court by RENE GUERRA, Criminal District Attorney in and for Hidalgo County, Texas, 100 N. Closner, 3rd floor, Edinburg TX 78539, by his Assistant Criminal District Attorneys CREGG THOMPSON and ROXANNE SALINAS.

APPELLEE is represented on appeal by RICARDO RODRIGUEZ JR.[1], Criminal District Attorney in and for Hidalgo County, Texas, 100 N. Closner, 3rd floor, Edinburg TX 78539, by his Assistant Criminal District Attorney, LUIS A. GONZALEZ.

---

[1] This appeal arose when former District Attorney Rene Guerra held office. As of January 1st, 2015, Ricardo Rodriguez Jr. is now the active district attorney for Hidalgo County.

## NOTES AS TO THE FORM OF CITATION

A.) Citation to the Clerk's Record will be to page number, *e.g.* CR 47 refers to Page 47 of the Clerk's Record.

B.) Citation to testimony in the Reporter's Record will be to volume and page numbers, *e.g.* '3 RR 56' refers to page 56 of volume 3 of the Reporter's Record.

C.) Citation to the State's Exhibits will be to exhibit number, *e.g.* SX 39 refers to State's Exhibit number 39, found in the 'exhibits' volume within the Reporter's Record.

D.) Reference to the Brief of Appellant will be to page number, *e.g.* Brief of Appellant, p. 9.

## NOTE AS TO ORAL ARGUMENT

The State of Texas respectfully submits that oral argument in the instant case would not serve to enlighten the Court further or illuminate the issues in that, because the facts and legal arguments are adequately presented in the briefs and record, the decisional process of the Court would not be significantly aided by oral argument. The State of Texas, therefore, respectfully submits that oral argument in this case is not necessary, and therefore waives oral argument.

Nonetheless, the State of Texas reserves the right to present oral argument should the Court grant oral argument.

# TABLE OF CONTENTS

Title Page ..................................................................................................i

Identification of Parties and Counsel...................................................... ii

Note as to the Form of Citation.............................................................. iii

Note as to Oral Argument .......................................................................iv

Table of Contents ....................................................................................v

Index of Authorities ............................................................................ vii

Statement of the Case..............................................................................x

Issues Presented .....................................................................................xi

Statement of Facts................................................................................ xii

Summary of Argument ...................................................................... xviii

Argument and Authorities........................................................................1

Counterpoint One (In Response to Issue No. One):

    *The evidence produced at Appellant's trial was legally sufficient to support the jury's guilty verdict beyond a reasonable doubt for the offense of Capital Murder of Reyes Garcia*.......................................................1

Counterpoint Two (In Response to Issue No. Two):

    *The trial court did not err when an unanimity instruction was not included in the jury charge* ...........................................................................8

Counterpoint Three (In Response to Issue No. Three):

    *Appellant's trial counsel was not ineffective for failing to request a unanimity instruction in the jury charge* ......................................................15

Conclusion ...............................................................................................24

Prayer .....................................................................................................25

Certificate of Compliance .......................................................................26

Certificate of Service ..............................................................................26

vi

# INDEX OF AUTHORITIES

## U.S. Supreme Court Cases

*In re Winship*, 397 U.S. 358 (1970) ..................................................................11

*Jackson v. Virginia*, 443 U.S. 307 (1979) ...........................................................1

*Massaro v. United States*, 538 U.S. 500 (2003) .....................................................15

*Strickland v. Washington*, 466 U.S. 668 (1984) ...........................................13, 14, 16

## Texas Court of Criminal Appeals Cases

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985).....................................10

*Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005)......................................15

*Beardsley v. State*, 738 S.W.2d 681 (Tex. Crim. App. 1987)....................................5

*Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002) ...........................................15

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)......................................3

*Davis v. State*, 278 S.W.3d 346 (Tex. Crim. App. 2009) ...................................13, 14

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999)........................................3

*Ex parte Napper*, 322 S.W.3d 202 (Tex. Crim. App. 2010)...............................13, 14

*Garcia v. State*, 919 S.W.2d 370 (Tex. Crim. App. 1994) ........................................2

*Garza v. State*, 213 S.W.3d 338 (Tex. Crim. App. 2007)........................................15

*Goff v. State*, 931 S.W.2d 537 (Tex. Crim. App. 1995).............................................6

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998) ......................................2

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) ..........................................3

*Marable v. State*, 85 S.W.3d 287 (Tex. Crim. App. 2002) ............................................ 6

*Middleton v. State*, 125 S.W.3d 450 (Tex. Crim. App. 2003) ...................................10

*Ortiz v. State*, 93 S.W.3d 79 (Tex. Crim. App. 2002) ...............................................15

*Powell v. State*, 194 S.W.3d 503 (Tex. Crim. App. 2006)......................................... 5, 6

*Ransom v. State*, 920 S.W.2d 288 (Tex. Crim. App. 1994).........................................5

*Sorto v. State*, 173 S.W.3d 469 (Tex. Crim. App. 2005) ............................................ 6

*State v. Morales*, 253 S.W.3d 686 (Tex. Crim. App. 2008) ......................................14

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999)...............................14, 15

*Winfrey v. State*, 323 S.W.3d 875 (Tex. Crim. App. 2010)..............................1, 8, 9

**Texas Courts of Appeals Cases**

*Escobar v. State*, 28 S.W.3d 767 (Tex. App.—
    Corpus Christi 2000, pet. ref'd)....................................................................5

*Gardner v. State*, 2008 Tex. App. LEXIS 7326 (Tex. App.—
    Corpus Christi 2008)(not designated for publication)...........................11, 12

*Hanson v. State*, 55 S.W.3d 681 (Tex. App.—
    Austin 2001, pet. ref'd) ........................................... 11, 12 (n. 18), 13

*Jaynes v. State*, 216 S.W.3d 839 (Tex. App.—
    Corpus Christi 2006, no pet.)..................................................................14, 15

*Ozuna v. State*, 199 S.W.3d 601 (Tex. App.—
    Corpus Christi 2006, no pet.)........................................................................3

*Wheaton v. State*, 129 S.W.3d 267 (Tex. App.—
    Corpus Christi 2004, no pet.)........................................................................2

## Statutes and Constitutional Provisions

TEX. CODE CRIM. PROC. art. 36.29(a) ..................................................................11

TEX. CONST. art. I, § 19, art. V, § 13..................................................................11

TEX. PENAL CODE § 2.01....................................................................................11

TEX. PENAL CODE § 6.03(a) .................................................................................4

TEX. PENAL CODE § 6.03(b) .................................................................................4

TEX. PENAL CODE § 7.01(a) .................................................................................5

TEX. PENAL CODE § 7.01(b) .................................................................................5

TEX. PENAL CODE § 7.02(a)(2).............................................................................5

TEX. PENAL CODE § 7.02(b) .................................................................................5

TEX. PENAL CODE § 19.03....................................................................................4

TEX. PENAL CODE § 29.02(a) ...............................................................................4

TEX. PENAL CODE § 30.02(a)(3) ...........................................................................4

U.S. CONST. amends. VI, XIV .............................................................................11

## STATEMENT OF THE CASE

Appellant was charged by indictment in cause number CR-2968-11-B for two counts of Capital Murder. (CR 2-3).

On June 6, 2013, the jury found the Appellant guilty of Count One and Count Two. (28 RR 69).

On June 10, 2013, the State abandoned Count Two and the trial court imposed upon the Appellant a sentence of confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of life without parole. (29 RR 4-6, CR 127-29).

On June 20, 2013, the Appellant filed a motion for new trial. (CR 139-43). On the same day, the Appellant timely filed a notice of appeal. (CR 131).

On June 28, 2013, the trial court denied the Appellant's motion for new trial. (CR 146).

The Appellant is now before this Court by way of three points of error.

# ISSUES PRESENTED

<u>Counterpoint One (In Response to Issue No. One):</u>

*The evidence produced at Appellant's trial was legally sufficient to support the jury's guilty verdict beyond a reasonable doubt for the offense of Capital Murder of Reyes Garcia.*

<u>Counterpoint Two (In Response to Issue No. Two):</u>

*The trial court did not err when an unanimity instruction was not included in the jury charge.*

<u>Counterpoint Three (In Response to Issue No. Three):</u>

*Appellant's trial counsel was not ineffective for failing to request a unanimity instruction in the jury charge.*

## STATEMENT OF FACTS

### Facts Pertinent to Counterpoint One (In Response to Issue No. One) [2]

On the evening of June 23, 2010, Graciela Casas Arjona ('Appellant') and her sister, Vanessa Garcia ('Vanessa'), were cooking dinner at Vanessa's home. 23 RR 80-81. Vanessa resided at 2416 Kirk Ave., Mission, TX along with her husband Reyes Garcia Jr. ('Victim'), their son, Reyes Garcia III ('Garcia III'), and their daughters. While the two sisters were cooking, the victim and Appellant's boyfriend, Roel Cantu, were outside in the back patio drinking beer. 23 RR 83.

Later in the evening, Garcia III, the victim's son, was in his room when he saw men dressed in black walking through the hallway. 23 RR 64. Garcia III followed them. 23 RR 66. While following, Garcia III noticed that one of them was taking the guns the victim had displayed on the wall of the living room. 23 RR 71. A person behind Garcia III told him to follow and Garcia III did so. 23 RR 66. Garcia III walked into the master bedroom and saw his sisters, Appellant, and his mother Vanessa on top of the bed. 23 RR 66-67. The men in black had large machine-gun type weapons. 23 RR 67. Garcia III was told to go to the bed and put his head down; Garcia III stood against the bed and looked down. 23 RR

---

[2] Because Appellant was convicted solely on Count One of the indictment and challenges the sufficiency of the evidence thereof, the State has provided only those facts as it deems pertinent to this issue.

67. The men in black searched through the room and dumped the contents out of some drawers. 23 RR 68.

The victim was brought into the room and the men in black asked the victim for money. *Id*. The victim told him he had already gave them everything he had. *Id*. One of the men in black kicked the victim. 23 RR 69. Garcia III could feel the kicks as the victim had been on the floor, next to his feet and against his legs. *Id*. The victim was taken out of the room. *Id*. Shortly after, Garcia III hears the sound of gun fire, followed by the sound of the men in black running out of the house. *Id*. Garcia III heard a vehicle burning rubber. *Id*. Garcia III ran out the room and saw his father, the victim, on the floor full of blood. 23 RR 70. After some difficulty with the phone, the survivors called police. 23 RR 71.

Officer Eduardo Hernandez of the Mission Police Department ('MPD') was the first to arrive at 2416 Kirk Ave., Mission, TX after dispatch radioed that a male subject had been shot at the address. 24 RR 67-68. Officer Hernandez walked inside the home after Vanessa told him that her husband was shot. 24 RR 69. Officer Hernandez saw the victim's bloody and gun-shot ridden body on the floor. 24 RR 70. Officer Hernandez immediately called the ambulance after he determined that the victim was not moving and did not appear to be alive. 24 RR 70. Forensic pathologist Dr. Norma Jean Farley performed the autopsy on the victim and discovered 8 gun-shot wounds on his body. 25 RR 43. Dr. Farley

opined that the victim's cause of death was gun-shot wounds to the torso. 25 RR 69.[3]

Shortly after the murder, Officer Rosember Ramirez arrived at the crime scene. 23 RR 23. Roel Cantu, Appellant's boyfriend, was outside, laying on the tailgate of a black truck, complaining of chest and stomach pain. 23 RR 24-25. Once inside the home, Officer Ramirez noticed bullet casings on the floor of the living room area. 23 RR 28. Officer Ramirez talked to Vanessa, who told him about a security camera video receiver in one of the bedrooms. 23 RR 29. In this particular room, Officer Ramirez finds the video receiver unplugged, as well as clothing on the floor and the bed. *Id.* A drawer from the furniture was also on top of the bed. *Id.* Officer Ramirez talked to next-door neighbor Arnulfo Salinas, who lived in 2418 Kirk Ave., who stated he heard 6 shots and saw a black Ford Expedition leaving westbound with no headlights at a high rate of speed. 23 RR 30-31.

The video surveillance given to MPD showed a black Ford Expedition parked in the driveway of the victim's home shortly before the murder. 23 RR 104; SX 22-23. The video surveillance also showed four men exiting the vehicle. 23 RR 104-105; SX 22-23. MPD Investigators noticed that in the video, the back passengers had both exited the vehicle from the back driver-side door, indicating

---

[3] Dr. Farley's autopsy report is memorialized in SX 73 of the record.

that there was a problem with the back passenger-side door. *Id*. Upon close inspection of the video, it appeared to MPD investigators that the black Ford Expedition had an indention on the passenger-side step rail. *Id*.

After viewing the home surveillance video, MPD investigators visited Roel Cantu at the hospital emergency room. 23 RR 115. Cantu stated that a person he referred to as 'El Sapo' was involved in the murder. 23 RR 117. When MPD investigators could not find 'El Sapo', MPD Investigator Catarino Sanchez talked to Cantu again at the police department to try to get more information. 23 RR 119. Investigator Sanchez noted that Cantu's second statement had been different from the first one he made at the hospital, so Cantu was detained for investigative purposes.[4] 23 RR 119-122. Investigator Sanchez next talked to the Appellant. 23 RR 123. Appellant provided a written statement in which she directly contested Cantu's account of the murder. 23 RR 126-27.[5] Next, 'El Sapo' and his wife came to the police station and provided written statements which casted doubt on Cantu's allegation of his involvement in the victim's murder.[6] 23 RR 127-28.

---

[4] During trial, Investigator Sanchez described Cantu as being deceptive during this encounter as Cantu was continuously rubbing his hands on his thighs as he was talking. 23 RR 119-20. Sanchez also described the differences between Cantu's first and second statements, memorialized in 23 RR 120-22.

[5] Appellant's first statement is memorialized in SX 40 of the record.

[6] 'El Sapo' was identified as Jesus Diaz Garcia; 'El Sapo's' wife was identified as Flor Giselle Flores Ramirez. 23 RR 127.

Shortly after, Cantu made a third statement confessing his involvement in the murder of the victim. 23 RR 129-30. Cantu's third statement cleared 'El Sapo' and directed MPD investigators to Tony Mendez and Mendez's cousin Jeffery Juarez, also known as 'El Dragon.'[7] *Id.* Juarez was a known member of the Tri-City Bombers, a criminal street gang out of the Pharr-San Juan-Alamo, Texas area. 23 RR 130.

Surveillance was setup at Tony Mendez's home address, 411 Nicholson, Pharr, Texas.[8] 23 RR 131. When no one showed up at the property, a search warrant was executed the following day; ammunition was found in the attic, but not much else. *Id.* To date, Tony Mendez has not been found.[9] 23 RR 220. Later, an individual talked to Donna police department, identifying Ezequiel Angel Falcon as one of the persons in the home surveillance video of the black Ford Expedition the night of the murder.[10] 26 RR 49. Cantu indentified Falcon, via

---

[7] Phone records revealed that Cantu had made a phone call to Tony Mendez just minutes prior to the masked men making entry to the back yard of the home. 23 RR 211-12. In addition, in his third statement, Cantu stated that Juarez was one of the masked men. 23 RR 212.

[8] In his statement, Cantu admitted to meeting with Mendez at this home. 23 RR 134.

[9] Mendez's cellphone was 'pinged' at Devon Drive, Mission, Texas, before execution of the search warrant on 411 Nicholson. 23 RR 218. This address is where Mendez's parents and brother resided. *Id.*

[10] The surveillance video was given to the local media by MPD investigators for public assistance in indentifying the four individuals who exited the black Ford Expedition. 26 RR 49.

photo lineup, as the man who kicked the victim prior to the murder.[11] *Id*.; 23 RR 135. A search warrant was executed at Falcon's home address, 6316 Whitetail, Donna, Texas. 23 RR 135-39. Cocaine, marihuana, and ammunition was found on the property. 23 RR 137. The homeowners were arrested, but Falcon was not found. 23 RR 137-38. The following day, Falcon turned himself in.[12] 23 RR 138-39.

On July 8th, 2010, MPD investigators received a surveillance video from the Falfurrias checkpoint. 23 RR 141. The video showed Jeffery Juarez as the front passenger in a vehicle, heading northbound, about an hour after the murder of the victim.[13] 23 RR 141-42. Juarez's sister, Roxanne Hernandez, was identified as the rear passenger. The male driver remained unidentified, but Pharr PD investigator J.J. Mendoza thought that the driver looked like a man that worked at a bakery in their city. 23 RR 149-50. About the same time, MPD investigators received information that Roxanne Hernandez had been arrested in Pharr, TX, along with two other men who had not been identified as any of the men in the home

---

[11] Cantu also stated that the man who kicked the victim wore red tennis shoes. 23 RR 139.

[12] One of the individuals arrested at 6316 Whitetail was Falcon's mother. Falcon agreed to turn himself in if his mother was released. MPD investigators arranged for this exchange to take place. 23 RR 139-40.

[13] Cellphone location data records revealed that Juarez had been traveling from the Mission-Palmview area to McAllen-Pharr area, then to Falfurrias, all the way to Katy, Texas before, during, and after the murder. These records correspond with the sighting of Juarez via video surveillance at the Falfurias checkpoint.

surveillance video. 23 RR 149. Surveillance was setup at the location of La Reynera bakery, and the same black Ford Expedition from the victim's home surveillance video was found parked on the side of the building. 23 RR 150-51. Using the Expedition's license plate, investigators were able to track down the registered owner. 23 RR 155.

MPD investigators visited the registered owner, Diana Duran, who stated she had sold the Expedition to her daughter Jessica, but that a guy named 'Ricky' usually drove it. 23 RR 156. Duran contacted her granddaughter Jasmine, daughter of Jessica, who came to Duran's house to speak with MPD investigators. 23 RR 157. Jasmine confirmed that 'Ricky' was actually Ricardo Sanchez, her ex-boyfriend. *Id.* Sanchez had been one of the men arrested with Roxanne Hernandez. *Id.* On July 10th, 2010, a search warrant was executed on Sanchez's home address, 228 West Clark, Pharr, Texas.[14] 23 RR 158.

While in county jail, an investigator from the Hidalgo County Sherriff's Office overheard Sanchez speaking about getting rid of weapons during a three-way phone call. 25 RR 13. Sanchez also stated that his blood would be found inside the vehicle he was driving.[15] *Id.* Investigators were able to find out the

---

[14] Sanchez lived about a block away from La Reynera bakery, located on 132 West Clark, Pharr, Texas. 23 RR 158.

[15] Sanchez's DNA matched the blood that was later found inside the black Ford Expedition's driver side door handle and steering wheel after the execution of a search warrant on the vehicle.. 25 RR 20-21; 26 RR 53.

phone number of the unknown persons Sanchez was talking to, and 'pinged' its location at 207 Camino Real, Apartment no. 6 in San Juan, Texas. 25 RR 12-14. A search warrant was executed at 207 Camino Real, resulting in investigators finding three weapons, cocaine, and marihuana. 25 RR 17. One of the weapons found at the apartment was a shotgun that belonged to the victim. 25 RR 26.

On July 21st, 2010, MPD investigator Dina Valdez met up with Appellant at a doctor's office. 26 RR 55. Investigator Valdez had been trying to locate Tony Mendez as Appellant had previously stated that she and Roel Cantu had spent some time living with him. 26 RR 54. Appellant, pregnant at the time, identified Tony Mendez via photo lineup. 25 RR 21-23, 26 RR 55. About 10 months after the victim's murder, in April 2011, Roel Cantu incriminated Appellant in the crime. 26 RR 96. Cantu stated he had not previously incriminated her because of her pregnancy. 26 RR 97. Investigators Valdez, Perez, and Olvera visited Appellant on April 4, 2011, at a trailer park near 107 and Ware Road in Edinburg. 26 RR 57. Appellant voluntarily drove to the police department to talk to Investigator Valdez and provided a second statement. 26 RR 63, 67.

In her second statement, Appellant recanted the contents of her first statement. 26 RR 68.[16] She stated that her sister Vanessa Garcia, the victim's wife, wanted the victim dead, and individually offered Cantu and her brother

---

[16] Appellant's second statement is memorialized in SX 86 of the record.

Alejandro Arjona ten thousand dollars to kill him. 26 RR 69. Appellant stated she received money for providing information to law enforcement which led to the victim being busted for drug possession. 26 RR 70. Appellant also admitted that she and Cantu had been staying with Tony Mendez at his apartment prior to the murder. *Id.* After providing the statement, Investigator Valdez drove Appellant to her home. 26 RR 77. Later that day, an arrest warrant was issued on Vanessa, who showed up at the police department in the afternoon and was subsequently incarcerated. 26 RR 78-79.

On April 6, 2011, Appellant voluntarily returned to the police department as requested by MPD investigators. 26 RR 80. When she arrived that evening, Appellant was arrested based on a warrant. *Id.* Shortly after, Appellant provided her third and final statement. 26 RR 87.[17] In her third statement, Appellant revealed that Vanessa had wanted the victim gone, whether dead, in jail, or beat up. 26 RR 89. Vanessa sought Appellant's help in finding someone to kill the victim. *Id.* Vanessa had offered her and Roel Cantu ten thousand dollars to find someone to kill the victim. 26 RR 90. While living with Tony Mendez, Appellant and Cantu had told Mendez about Vanessa's offer as well as guns and money available for the taking. *Id.* Specifically, Appellant stated "I told Tony that Vanessa was looking for someone to kill her husband and that she was willing to

---

[17] Appellant's third and final statement is memorialized in SX 94 of the record.

pay for it." *Id.* Mendez told Appellant and Cantu that he would make contact with his cousin 'El Dragon,' a.k.a. Jeffery Juarez, and tell him about robbing the victim. 26 RR 91. Juarez later showed up at Mendez's apartment. *Id.* Mendez told Juarez that there was lots of money and guns at the victim's house. *Id.* Juarez agreed to arrange the robbery. *Id.*

Continuing her third statement, Appellant stated that on the night of the murder, Vanessa had invited Appellant over to her home to eat caldo. 26 RR 92. Appellant, Cantu, and Vanessa knew that the robbery was going to take place but not the exact time, and that the hired guys that Juarez gathered together would not hurt Appellant, the kids, or Vanessa. *Id.* Appellant next described what happened when the masked men shot and killed the victim. 26 RR 93. Appellant then stated that neither she nor Cantu received anything for robbing the victim's house. 26 RR 94.

## SUMMARY OF ARGUMENT

Appellant's legal insufficiency claim is without merit because the evidence, properly viewed in the light most favorable to the verdict, was legally sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

Appellant's jury charge error claim is without merit because the legal authorities hold that a unanimity instruction is unnecessary when party liability and co-conspirator liability theories of Capital Murder are alleged as alternates in the jury charge.

Appellant's ineffective assistance of counsel claim is without merit because Appellant fails to prove that trial counsel's failure to object to the jury charge under unanimity grounds amounted to ineffective assistance under *Strickland*.

## ARGUMENT AND AUTHORITIES

### Counterpoint One (In Response to Issue No. One)

*The evidence produced at Appellant's trial was legally sufficient to support the jury's guilty verdict beyond a reasonable doubt for the offense of Capital Murder of Reyes Garcia, and, as such, it is unnecessary for this Court to reverse the judgment.*

### Argument:

In Issue No. One, Appellant argues that the evidence produced at trial was legally insufficient to support the jury's guilty verdict. *See* Brief of Appellant, pp. 11-31. Appellant's claim is without merit.

#### A. Rules and Principles

A review of the legal sufficiency of the evidence does not involve any weighing of favorable and non-favorable evidence. Instead, when reviewing a case for legal sufficiency, the reviewing court views all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Winfrey v. State*, 323 S.W.3d 875, 878-79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most

1

favorable to the verdict." *Id*. at 879. "It has been said quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighing includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id*.

The Court must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant committed the crime for which the jury found him guilty. *See Id*. It is the obligation and responsibility of appellate courts "to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *See Id*. at 882. In determining the legal sufficiency of the evidence, appellate courts will properly consider all of the evidence, admissible and inadmissible. *See Johnson v. State*, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998). That is, even evidence erroneously admitted is properly considered in a legal sufficiency review. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994).

Sufficiency of the evidence is measured against the elements of the offense as defined in a hypothetically correct jury charge. *See Wheaton v. State*, 129 S.W.3d 267, 272 (Tex. App.—Corpus Christi 2004, no pet.). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the

2

State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In analyzing the verdict, appellate courts recognize that the jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *See Ozuna v. State*, 199 S.W.3d 601, 610 (Tex. App.—Corpus Christi 2006, no pet.). The jury may accept or reject all or part of the evidence. *See Id*. The jury may also draw reasonable inferences and make reasonable deductions from the evidence. *See Id*.; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (jurors are permitted to make reasonable inferences from the evidence, whether direct or circumstantial, and circumstantial evidence alone can be sufficient to establish guilt). Thus, when performing a legal sufficiency review, appellate courts may not re-evaluate the weight and credibility of the evidence and substitute their judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

## B. Applicable Law

Appellant was found guilty by jury for Capital Murder. A conviction for Capital Murder, as charged in the indictment in the instant case, requires the State to prove beyond a reasonable doubt that a person intentionally commits murder in the course of committing or attempting to commit the offense of Robbery or

3

Burglary.  *See* TEX. PENAL CODE § 19.03.  A person commits the offense of robbery if, in the course of committing theft and with intent to obtain property, he intentionally or knowingly causes bodily injury to another.  *See* TEX. PENAL CODE § 29.02(a).  A person commits the offense of burglary of a building if, without the effective consent of the owner, the person enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault.  *See* TEX. PENAL CODE § 30.02(a)(3).

A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.  TEX. PENAL CODE § 6.03(a).  A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist; A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.  TEX. PENAL CODE § 6.03(b).

The jury charge allowed the jury to convict Appellant as either a principal or as party for Capital Murder.  *See* CR 109-118.  To prove that Appellant was guilty of Capital Murder, under a party theory, the State was required to show that he was criminally responsible for the actions of another under TEX. PENAL CODE § 7.02.  The jury charge in the instant case provided an instruction on the law of parties

4

under TEX. PENAL CODE § 7.01(a) and § 7.02(b). A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or both. *See* TEX. PENAL CODE § 7.01(a). Each party to an offense may be charged with commission of the offense. *See* TEX. PENAL CODE § 7.01(b). Circumstantial evidence alone may also be used to prove that a person is a party to an offense. *See, e.g., Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994); *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987); *Escobar v. State*, 28 S.W.3d 767, 774 (Tex. App. – Corpus Christi 2000, pet. ref'd).

A person is criminally responsible for an offense committed by another if acting with the intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. *See* TEX. PENAL CODE § 7.02(a)(2). A person is criminally responsible for an offense committed by the conduct of another if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying of the conspiracy. *See* TEX. PENAL CODE § 7.02 (b). It is proper to submit

5

a jury charge on either Section 7.02 (a)(2) or Section 7.02 (b), although those concepts are not alleged in the indictment. *See, e.g., Powell*, 194 S.W.3d at 506; *Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005); *Marable v. State*, 85 S.W.3d 287, 287-88 (Tex. Crim. App. 2002); *Goff v. State*, 931 S.W.2d 537, 544 n. 5 (Tex. Crim. App. 1995).

### C. Analysis

Appellant argues that the evidence presented at trial was not legally sufficient to prove beyond a reasonable doubt that Appellant committed the offense of Capital Murder. Brief of Appellant, p. 11. Contrary to this argument, the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that Appellant committed Capital Murder under both the law of parties and co-conspirator liability.

Appellant cannot seriously contend that the State failed to prove that a Capital Murder, specifically one committed in the course of a Robbery or Burglary, had occurred. During trial, there was overwhelming evidence that four masked men riding in a black Ford Expedition parked on the driveway of the victim's residence, 2416 Kirk Street, Mission, TX (23 RR 22-23, 64-70, 104-105; SX 22-23). These masked men entered the home and demanded money (23 RR 64, 68); kicked, shot, and killed the victim (23 RR 69; 24 RR 67-69; 25 RR 43, 69; SX 73); stole the victim's gun collection (23 RR 71); and left the crime scene in

6

the black Ford Expedition, westbound, at a high rate of speed with no headlights on (23 RR 30-31).

Rather, the thrust of Appellant's argument is that the evidence was insufficient for the State to prove beyond a reasonable doubt that Appellant was guilty as a party or co-conspirator for the death of the victim. To prove that Appellant was guilty of Capital Murder, under a party theory, the State was required to show that she was criminally responsible for the actions of another under TEX. PENAL CODE § 7.02, beyond a reasonable doubt. Under the application of the guidelines above, provided in this brief under subsection "A. Rules and Principles," the Court with find that the evidence in this case was sufficient to support Appellant's conviction.

Based on the evidence presented during trial, the jury in the instant case could have easily inferred that Appellant was involved in the murder of the victim. Appellant's own statements, specifically her third statement, revealed that her sister Vanessa had offered Appellant and Roel Cantu ten thousand dollars to hire someone to kill the victim. 26 RR 90. Appellant and Cantu shared this information with the man they were living with at the time, Tony Mendez. *Id.* Specifically, Appellant stated "I told Tony that Vanessa was looking for someone to kill her husband and that she was willing to pay for it." *Id.* Appellant also told

7

Mendez that there was lots of money and guns available for the taking at the victim's home. *Id.*

In her brief, Appellant argues that the murder of the victim was the independent actions of another and that she did not know the murder was going to take place despite knowing the time and place of the robbery. *See* Brief of Appellant, pp. 22-23. Appellant totally ignores that by informing Mendez of Vanessa's offer of ten thousand dollars for the murder of the victim, Appellant had set in motion the events to come, as thereafter Mendez contacted his cousin Jeffery Juarez, and planned and executed the armed robbery-homicide. 26 RR 91. Based on Appellant's statement, the jury could have reasonably inferred that Appellant encouraged and solicited the masked men to kill the Appellant. Viewing the evidence in the light most favorable to the verdict, there was legally sufficient evidence to find Appellant guilty as a party under TEX. PENAL CODE § 7.02 (a)(2). *See Winfrey*, 323 S.W.3d at 878-79.

Appellant also argues that the evidence is insufficient to support her conviction under co-conspirator liability because she could not have anticipated the murder of the victim. *See* Brief of Appellant, pp. 24-30. Appellant emphasizes her statement that she did not know whether the victim was going to be killed the night of the murder. *See* Brief of Appellant, pg. 28. Even if this contention were true, Appellant cannot escape the fact that the victim's murder should have been

8

anticipated. Again, Appellant totally ignores that by informing Mendez of Vanessa's offer of ten thousand dollars for the murder of the victim, Appellant had set in motion the armed robbery-homicide of the victim. 26 RR 91. Appellant admitted that she knew the robbery was going to take place that day, but not the exact time. *Id*. Appellant also admitted that she knew that she, her sister Vanessa, nor the children would be hurt during commission of the robbery. *Id*. Based on entirety of the evidence, the jury could have reasonably concluded that the murder of the victim was committed in furtherance of the planned robbery and that Appellant should have anticipated the murder of the victim as a foreseeable consequence of the conspiracy to commit robbery. Viewing the evidence in the light most favorable to the verdict, there was legally sufficient evidence to find Appellant guilty as a co-conspirator under TEX. PENAL CODE § 7.02 (b). *See Winfrey*, 323 S.W.3d at 878-79.

**Counterpoint Two (In Response to Issue No. Two)**

*The trial court did not err when an unanimity instruction was not included in the jury charge.*

**Argument:**

In Issue No. Two, Appellant argues that the trial court erred when it failed to include a unanimity instruction in the jury charge as to the alternative paragraphs alleged in Count One of the indictment. *See* Brief of Appellant, pp. 32-39. Appellant's claim is without merit.

**A. Rules and Principles**

As discussed above in the State's response to Appellant's Issue No. One, the jury charge authorized the jury to convict Appellant of Capital Murder if the jury found she either assisted others in the offense of Capital Murder, under TEX. PENAL CODE § 7.02(a)(2), or conspired with others, who committed Capital Murder in furtherance of the conspiracy, under § 7.02 (b). *See* CR 109-118. In reviewing the charge, this Court must first decide whether error exists. *See Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Because Appellant did not properly object to the alleged jury charge error at trial, Appellant will only obtain reversal if the alleged error, assuming without conceding it exists, was egregious. *See* Brief of Appellant, p. 32 (conceding defense counsel did not object to the jury charge); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (describing "egregious harm").

The Texas Constitution includes a due course of law protection along with the requirement that only a unanimous jury may convict a defendant charged with a felony. *See* TEX. CONST. art. I, § 19, art. V, § 13; *see also* TEX. CODE CRIM. PROC. art. 36.29(a). The Sixth Amendment guarantees a right to trial by jury while the Fourteenth Amendment contains due process protections, which the Supreme Court has determined require juries to find every element of a charged offense beyond a reasonable doubt. *See* U.S. CONST. amends. VI, XIV; *In re Winship*, 397 U.S. 358, 364 (1970). The penal code also requires that "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." TEX. PENAL CODE § 2.01.

Therefore, if a person is charged with two different offenses, a jury may only convict the person of both offenses if the jury unanimously agrees the State has proven every element of each offense beyond a reasonable doubt. *Gardner v. State*, 2008 Tex. App. LEXIS 7326, *20 (Tex. App.—Corpus Christi 2008)(not designated for publication)(citing *Hanson v. State*, 55 S.W.3d 681 (Tex. App.-Austin 2001, pet. ref'd)). When a defendant is tried for two different and separate offenses, a general jury charge including both offenses submitted in the disjunctive would be inappropriate. *Id*. This rule, however, does not apply to alternate

methods, manner, or means by which an accused is charged with committing the one-charged offense.[18] *See Id*.

## B. Analysis

As previously mentioned above, Appellant was charged with the offense of Capital Murder, and the charge authorized conviction on a finding that she either assisted others in the offense of Capital Murder, under TEX. PENAL CODE § 7.02(a)(2), or conspired with others, who committed Capital Murder in furtherance of the conspiracy, under § 7.02 (b). *See* CR 109-118. The State has previously established above in this brief that the evidence is legally sufficient to establish guilt under either theory. In addition, liability under either section was simply alternate manner and means to which the unanimity rule does not apply. *See Gardner*, 2008 Tex. App. LEXIS 7326, at *20. Therefore, jury unanimity with

---

[18] In *Hanson v. State*, Hanson was charged with the single offense of capital murder, and the charge authorized conviction on a finding that he either assisted another to commit the offense (under § 7.02(a)(2)) or conspired with another who committed the offense in furtherance of the conspiracy (under § 7.02(b)). *Hanson*, 55 S.W.3d at 694. Like the charge in the case before this Court, the charge in *Hanson* was submitted in two separate application paragraphs joined by "or." *See Id*. at 693; CR 112. The *Hanson* court stated, "The two alternate theories of party liability were merely alternate methods or means by which [Hanson] committed the one charged offense. Jury unanimity as to which theory of party liability applied was not necessary, and the general verdict of guilt was proper so long as either theory was proved." *Id*. at 694. Hanson further argued that because subsections (a)(2) and (b) of penal code section 7.02 assign criminal liability, they are offenses. And, because they do not contain the same elements, they are different offenses. *Id*. The Hanson court disagreed, stating, "Section 7.02 does not independently define criminal conduct or prescribe punishment therefor. Instead, section 7.02 enumerates the various ways in which a person can be held criminally responsible for another's criminal conduct, as that conduct is defined elsewhere in the code." *Id*. at 694-95.

respect to which theory of party liability applied was not necessary, and the general verdict of guilty was proper. *See Id*. at \*22 (citing *Hanson,* 55 S.W.3d at 694-95).

## Counterpoint Three (In Response to Issue No. Three)

*Appellant's trial counsel was not ineffective for failing to request a unanimity instruction in the jury charge.*

## Argument:

In Issue No. Three, Appellant argues that trial counsel was ineffective when it failed to request a unanimity instruction in the jury charge. *See* Brief of Appellant, p. 39. Appellant's claim is without merit.

### A. Rules and Principles

"To obtain a reversal of a conviction under the *Strickland* test, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding." *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687).

13

"To establish deficient performance, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). "The prejudice prong of Strickland requires showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 248 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). "[E]ach case must be judged on its own unique facts." *Davis*, 278 S.W.3d at 353.

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *see also Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *See State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate...").

14

Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 n.6. In almost all cases, direct appeal is an inadequate vehicle for raising an ineffective assistance claim because the record is generally underdeveloped. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *see also Massaro v. United States*, 538 U.S. 500, 504-05 (2003). If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, appellate courts will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007)(citing *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002)).

## B. Analysis

Appellant argues that her trial attorneys were ineffective when they committed egregious harm by not objecting to the jury charge and requesting a unanimity instruction as to the alternative paragraphs alleged in Count One of the indictment. *See* Brief of Appellant, p. 40. However, as discussed above in the State's response to Appellant's Issue No. Two, the trial court did not commit

15

egregious error by failing to place a unanimity instruction in the jury charge because none was required. Thus, trial counsel did not render ineffective assistance in failing to object to the jury charge on unanimity grounds. As such, Appellant fails to show a reasonable probability that the result of the proceeding would have been different had trial counsel made proper objections. *See Strickland*, 466 U.S. at 694.

## CONCLUSION

The State of Texas, Appellee, respectfully submits, that, for the reasons set forth herein, the evidence presented in the instant case was legally sufficient to support the jury's guilty verdict; the trial court did not err by failing to submit a unanimity instruction in the jury charge; and Appellant's trial counsel was not ineffective for failing to object to the absence of a unanimity instruction in the jury charge. Appellee respectfully submits that the Judgment of the trial court should in all respects be affirmed.

## PRAYER

Wherefore, premises considered, the State of Texas prays the Court affirm the Judgment of the trial court.

Respectfully submitted,

RICARDO RODRIGUEZ, JR.
Criminal District Attorney
Hidalgo County, Texas


/s/ Luis A. Gonzalez

LUIS A. GONZALEZ, ASSISTANT
Criminal District Attorney
Hidalgo County, Texas


HIDALGO COUNTY COURTHOUSE
Edinburg TX 78539
Telephone #:  (956) 318-2300 ext. 750
Facsimile #:  (956) 380-0407
luis.gonzalez@da.co.hidalgo.tx.us
State Bar No. 24083088

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document has <u>7937</u> words.


/s/ Luis A. Gonzalez
Luis A. Gonzalez


## CERTIFICATE OF SERVICE

I hereby certify that I have sent a true and correct copy of the foregoing Brief of Appellee to counsel for Appellant, Victoria Guerra, via electronic service, on this the 28th day of January, 2015.


/s/ Luis A. Gonzalez
Luis A. Gonzalez